**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN ASHTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIV. ACT. NO. 2:06cv226-ID** |
| **v.** | ) | **(WO)** |
| | ) | |
| **FLORALA MEMORIAL HOSP., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. INTRODUCTION**

Before the court are three motions to dismiss filed by Defendants Blaire Henson

("Henson"), Russell Page, M.D. ("Dr. Page"), and Samuel E. Poppell, M.D. ("Dr.

Poppell"), pursuant to Rule 12(b)(2) & (6) of the Federal Rules of Civil Procedure.[1]

(Doc. Nos. 7, 8, 19.)  Also before the court is Plaintiff John Ashton's ("Ashton") motion

for leave to amend the complaint.  (Doc. No. 22.)  All motions are opposed.  (Doc. Nos.

12-13, 17, 23-24, 26.)  In his Complaint, Ashton brings claims pursuant to the Emergency

Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.  Moving to

amend his original Complaint, Ashton seeks to add supplemental state law claims.

Opposing the motion to amend, the individual Defendants assert that the new state law

claims are barred by the statute of limitations because they do not meet the conditions for

relation back.  <u>See</u> Fed. R. Civ. P. 15(c).  The individual Defendants also urge dismissal

---

[1] The court refers collectively to Henson, Dr. Page and Dr. Poppell as the
"individual Defendants."

of the EMTALA causes of action for failure to state a claim.  See Fed. R. Civ. P.

12(b)(6).  Dr. Poppell raises an additional ground for dismissal, asserting that the court

lacks *in personam* jurisdiction over him.  See Fed. R. Civ. P. 12(b)(2).  After careful

consideration of the arguments of counsel, the relevant law and the record as a whole, the

court finds that Dr. Poppell's Rule 12(b)(2) motion to dismiss is due to be granted, that

Henson's and Dr. Page's Rule 12(b)(6) motions to dismiss are due to be granted, and that

Ashton's motion for leave to amend the complaint is due to be granted on the condition

that he file a revised First Amended Complaint which complies with the court's rulings

herein.

## II.  JURISDICTION

The court exercises subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental

jurisdiction).  Henson and Dr. Page do not contest personal jurisdiction or venue.

## III.  FACTS AND PROCEDURAL HISTORY

On March 10, 2006, asserting violations of EMTALA, 42 U.S.C. § 1395dd(a)-(c),

Ashton filed an eight-count complaint against Defendants Florala Memorial Hospital,

Henson, Dr. Page and Dr. Poppell.  (Compl. (Doc. No. 1).)  In his Complaint, Ashton

alleges that, on or about March 12, 2004, having injured his left eye, he sought

emergency medical treatment at Florala Memorial Hospital where Dr. Page was working

as the on-call emergency room physician and where Henson served as the hospital administrator. (Id. ¶¶ 3, 5, 7.) Ashton complains that, at this Alabama hospital, he suffered harm because he was not administered a proper medical screening examination and his medical condition was not stabilized prior to his transfer to "another medical facility." (Id. ¶¶ 7, 10, 17, 25.)

Additionally, in his original Complaint, Ashton contends that his transfer to the receiving facility violated EMTALA because that facility "had not agreed to accept said transfer or to provide appropriate medical treatment" for Ashton. (Id. ¶¶ 14, 17.) Ashton avers that Dr. Poppell "is the optometrist to whom [he] was transferred for treatment by Florala Memorial Hospital." (Id. ¶ 4.) Furthermore, Ashton alleges that Dr. Poppell has "minimum contacts" with Alabama so as to support the court's exercise of personal jurisdiction over him because Dr. Poppell "accepted the initial transfer of [Ashton]." (Id.) Ashton contends that it was "foreseeable that Dr. Poppell's action in accepting Alabama patients could make him amenable to suit in Alabama." (Id.) Ashton complains that, during the course of a twelve-hour period following his eye injury, he was transferred to four different hospitals before his medical condition was stabilized. (Id. ¶ 14.)

Subsequently, on April 6, 2006, Ashton filed a motion for leave to amend his complaint. In his proposed First Amended Complaint, Ashton joins state law claims against the individual Defendants, pursuant to the court's supplemental jurisdiction, 28 U.S.C. § 1367. (See 1st Am. Compl. (Doc. No. 22).) The state law claims are grounded upon allegations of negligent and outrageous conduct. Ashton also adds Emerald Coast Eye Institute as a Defendant. He alleges that Emerald Coast Eye Institute, located in

Walton County, Florida, "accepted the initial transfer" of Ashton and is the facility where

Dr. Poppell worked.  (Id. ¶¶ 3, 8.)  He avers that Emerald Coast Eye Institute and Dr.

Poppell "refused to treat and stabilize [his] condition."  (Id. ¶ 8.)  In his First Amended

Complaint, Ashton also corrects that Dr. Poppell is an ophthalmologist, not an

optometrist, as he originally alleged.  (Id. ¶ 4.)


## IV.  DISCUSSION

### A.  Dr. Poppell's Motion to Dismiss for Lack of Personal Jurisdiction

Dr. Poppell argues that personal jurisdiction over him is lacking and that,

therefore, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, he is due to

be dismissed as a defendant in this case.[2]  For the reasons to follow, the court agrees with

Dr. Poppell.


### 1.  Standard of Review

Exercising its discretion, the court declines to conduct an evidentiary hearing on

Dr. Poppell's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and the

court observes that no party has requested a hearing.  See Fed. R. Civ. P. 12(b)(2); see

Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996).  The plaintiff

bears the burden of establishing personal jurisdiction over a non-resident defendant.  See

---

[2] As stated, Dr. Poppell also has moved to dismiss the complaint against him pursuant to Rule 12(b)(6) for failure to state a claim.  The Eleventh Circuit, though, has held that the court first should address the issue of personal jurisdiction.  See Madara v. Hall, 916 F.2d 1510, 1513-14 (11th Cir. 1990).

S & Davis Intern., Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000).

When the issue of personal jurisdiction is decided on the briefs and accompanying

evidence, but without a discretionary evidentiary hearing, a plaintiff satisfies his or her

burden by demonstrating a "prima facie case of jurisdiction." Francosteel Corp.,

Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624, 626 (11th

Cir. 1994); Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes

a prima facie case by submitting evidence sufficient to defeat a motion for judgment

notwithstanding the verdict. See DeLong Equip. Co. v. Washington Mills Abrasive Co.,

840 F.2d 843, 845 (11th Cir. 1988). Consonant with that standard of review, the court

construes the allegations in the complaint as true if they are uncontroverted by affidavits

or deposition testimony. See Bracewell v. Nicholson Air Serv., Inc., 748 F.2d 1499,

1504 (11th Cir. 1984). The Eleventh Circuit has explained on more than one occasion

that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal

jurisdiction and a defendant then submits affidavits controverting those allegations, 'the

burden traditionally shifts back to the plaintiff to produce evidence supporting

jurisdiction[,] unless those affidavits contain only conclusory assertions that the

defendant is not subject to jurisdiction.'" Whitney Information Network, Inc. v. Xcentric

Venture, LLC, Slip No. 06-11888, 2006 WL 2243041, *3 (11th Cir. Aug. 1, 2006)

(quoting Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). If the

evidence conflicts, the court makes reasonable inferences in favor of the plaintiff,

particularly when the jurisdictional questions are seemingly intertwined with the merits of

the case. See DeLong, 840 F.2d at 845.

### 2. The Pleadings and Evidence

Ashton acknowledges that Dr. Poppell resides and practices ophthalmology in the State of Florida, but alleges that the court has *in personam* jurisdiction over Dr. Poppell because he "accepted the initial transfer of [Ashton]." (Proposed 1st Am. Compl. ¶ 5 (Ex. to Doc. No. 22).) "In doing so," Ashton avers that "Dr. Poppell purposefully availed himself with Alabama by accepting patients from Alabama in an attempt to make money off of Alabama residents." (Id.)

Arguing a contrary position, Dr. Poppell has submitted his affidavit. Therein, Dr. Poppell confirms Ashton's averments that he is an ophthalmologist who resides and practices his profession in the State of Florida. (Dr. Poppell Aff. at 1 (Ex. to Doc. No. 19). Dr. Poppell states further that he is not licensed to practice medicine in Alabama. He says that he does not engage in professional activities in Alabama, does not maintain hospital privileges in Alabama and does not conduct medical clinical services in Alabama. (See id.)

Specific to this case, Dr. Poppell attests that he has no contractual relations, written or oral, with Florala Memorial Hospital, and no medical privileges at that hospital. (See id.) Also, to his knowledge, other than the referral at issue in this case, Dr. Poppell attests that he never has received a referral from Florala Memorial Hospital's emergency room. (See id. at 2.) As to the telephone call he received on March 12, 2004, Dr. Poppell says as follows:

> [S]ometime on March 12, 2004, my office received a telephone call from the emergency department at Florala Memorial Hospital in Florala, Alabama. I spoke with Dr. Page who identified Mr. Ashton as a fellow

6

who had suffered trauma to his left eye during a fight.  I agreed for Dr. Page
to send Mr. Ashton to my clinic in Fort Walton, Florida.  Mr. Ashton
arrived via ambulance at 5:12 p.m.  I thoroughly evaluated Mr. Ashton and
determined that I could not properly care for him at my clinic due to the
severity of his condition, which demanded immediate surgery.

(Id.)

Furthermore, Dr. Poppell says that he has never been to Florala Memorial Hospital

and has never met Dr. Page.  Dr. Poppell states that he did not pay for Ashton's transfer

or transport from Alabama to Florida and that he did not arrange the details of that

transfer.  His office also did not instigate or supervise the transfer of Ashton from Florala

Memorial Hospital to Dr. Poppell's office.  (Id.)


### 3.  Analysis

Federal courts are "bound by state law concerning the amenability of a person or

corporation to suit, so long as state law does not exceed the limitations imposed by the

Due Process Clause of the Fourteenth Amendment."  Pesaplastic C.A. v. Cincinnati

Milacron Co., 750 F.2d 1516, 1521 (11th Cir. 1985).  However, "[w]hen the courts of the

forum State have interpreted the forum's long-arm statute to confer jurisdiction to the

limits allowed by federal due process, state law need not be applied: [the court] need only

ask whether the exercise of jurisdiction over the nonresident defendant comports with due

process."  Vermeulen v. Renault U.S.A., Inc., 975 F.2d 746, 753 (11th Cir. 1992), op.

modified and superseded on other grounds, 985 F.2d 1534 (11th Cir. 1993).  Here,

Alabama's long-arm statute authorizes personal jurisdiction to the fullest extent permitted

by the United States Constitution.  See Molina v. Merritt & Furman Ins. Agency, Inc.,

207 F.3d 1351, 1355-56 (11th Cir. 2000).

The Due Process Clause protects one's liberty interests by shielding an individual

from binding judgments in a forum with which he or she has established no meaningful

contacts, ties or relations.  See International Shoe Co. v. Washington, 326 U.S. 310, 319

(1945).  Due process, thus, requires that a non-resident defendant have "certain minimum

contacts with [the forum state] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  Id. at 316 (quoting Milliken v.

Meyer, 311 U.S. 457, 463 (1940)); see also Molina, 207 F.3d at 1356.

Due process contemplates two types of jurisdiction: general and specific.

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, n.9 (1984)

("Helicopteros"); see also Williams Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 392

& n.2 (11th Cir. 1988) (noting distinction between general and specific jurisdiction).

There is no evidence that Dr. Poppell had continuous and systematic contacts with the

State of Alabama sufficient to satisfy the standard for exercising general jurisdiction.  The

issue, therefore, is one of specific, not general, jurisdiction.  To this end, courts focus on

the defendant's specific contacts with the jurisdiction and also on basic principles of

fairness.  See Helicopteros, 466 U.S. at 414.

The Eleventh Circuit has formulated a three-part test for ascertaining whether

there are sufficient minimum contacts for a court to exercise specific jurisdiction over a

non-resident party:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve "some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws."  Third, the defendant's contacts with the forum must be "such that [the defendant] could reasonably anticipate being haled into court there."

Vermeulen, 985 F.2d at 1546 (internal citations omitted).  When considering the Vermeulen factors, a court also should remain mindful that "[i]t is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum."  Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990).

The court, thus, turns to an analysis of the three-part minimum contacts test articulated in Vermeulen, above, in light of the parties' arguments and the evidence submitted.  Dr. Poppell contends that the court lacks personal jurisdiction over him because "he does not possess the requisite minimum contacts with the State of Alabama to reasonably anticipate being haled into court here" and there is no factual basis from which it can be concluded that he purposefully availed himself of the privileges of conducting business in Alabama.  (Doc. No. 19 ¶¶ 2, 4.)  Relying on his affidavit, Dr. Poppell argues that his professional contact with Ashton and the forum state essentially was the result of happenstance when he received an unsolicited telephone call from a representative of Florala Memorial Hospital on March 12, 2004.  In Dr. Poppell's opinion, the evidence is woefully insufficient to constitute the type of minimum contacts sufficient to permit an Alabama court to exercise personal jurisdiction over an ophthalmologist who lives and works in the State of Florida.

9

On the other hand, Ashton contends that it is more than sufficient, for purposes of demonstrating minimum contacts, that Dr. Poppell accepted "the referral of a[n] Alabama resident from an Alabama hospital but then refused to treat or stabilize the injury." (Doc. No. 23 ¶ 1.) Ashton asserts that Dr. Poppell "purposely directed his activities at this forum by accepting the referral of [Ashton]." (Id. ¶¶ 1, 3.) Ashton argues that Dr. Poppell knew that his failure to treat or stabilize Ashton's injury "would have a devastating impact on . . . Ashton and that the brunt of this injury would be felt in Alabama" where Ashton resides. (Id. ¶ 1.) In support of his argument, Ashton contends that the court has personal jurisdiction over Dr. Poppell pursuant to the "effects test" set out in Calder v. Jones, 465 U.S. 783 (1984).

(a) The Relationship Between the Contacts and the Causes of Action

The evidence establishes that, as a result of his medical profession, Dr. Poppell had contact with the State of Alabama on March 12, 2004, when he answered a telephone call from the Florala Memorial Hospital emergency room and agreed to accept Ashton's transfer to his facility. The issue for purposes of the first prong of the Vermeulen test is whether this contact is related to or gave rise to Ashton's causes of action. See Vermeulen, 985 F.2d at 1546 ("the contacts must be related to the plaintiff's cause of action or have given rise to it").

Ashton's federal causes of action against Dr. Poppell assert violations of EMTALA, while the proposed state law claims are based upon allegations of negligence and outrage. The court easily concludes, and there is no serious dispute, that Dr.

10

Poppell's telephone contact with the forum state precipitated and resulted in his decisions to accept Ashton as an emergency transfer, but ultimately not to treat him, and that these decisions form the predicate of Ashton's causes of action. Stated differently, "but for" the telephone call Dr. Poppell received on March 12, 2004, Ashton would not have been transferred to Dr. Poppell's facility, and Ashton's and Dr. Poppell's paths would not have crossed that day. See, e.g., Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995) (assessing the "arising from" issue in terms of "but for" causation). The court, therefore, finds that the first prong of the three-part Vermeulen test is met.

### (b) Purposeful Availment

In some instances, when the cause of action arises from or is related to the contact, a single interaction with the forum state can constitute a sufficient basis upon which to predicate specific jurisdiction, but that single contact must be "purposeful" and directed at the forum. Bullion, 895 F.2d at 217. In other words, courts have no power over a non-resident defendant whose contacts with the jurisdiction are "random," "fortuitous" or "attenuated," or the result of the "unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted); Hanson v. Denckla, 357 U.S. 235, 251 (1958); see also Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (11th Cir. 1983) ("[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

The court has been unable to find any binding authority from this circuit concerning the exercise of personal jurisdiction over a non-resident physician where the treatment (or lack thereof, as alleged in this case) was rendered to the patient in the physician's home state, and notably the parties have cited none.  Other courts, however, have spoken on personal jurisdiction issues arising in the context of the doctor-patient relationship.  Finding these authorities persuasive, the court looks to these opinions for guidance in analyzing the issues presented in this case, but remains mindful that the personal jurisdictional inquiry is highly factual and must be assessed on the individual facts of each case.  See Kulko v. Superior Court, 436 U.S. 84, 92 (1978) (describing the minimum contacts, personal jurisdiction determination as "one in which few answers will be written in black and white"; observing that "[t]he greys are dominant and even among them the shades are innumerable") (quoting Estin v. Estin, 334 U.S. 541, 545 (1948)); American Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988) ("[e]ach case involving the issue of personal jurisdiction over a nonresident defendant must be decided on its own facts").

In Kennedy v. Freeman, the Tenth Circuit recognized that, in the context of physician-patient relationships which transcend the borders of the forum state, courts have developed "special rules . . . to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state."  919 F.2d 126, 129 (10th Cir. 1990); see also Worthy v. Bartley, 307 F. Supp.2d 1244, 1248-49 (M.D. Ala. 2004) (Albritton, J.) (citing Kennedy, supra, with approval).  For litigation purposes, personal jurisdiction concerns

12

often arise when physicians with localized practices treat out-of-state patients who have

sought the physicians' treatment.  In these instances, the physicians "become involved in

another state not as a result of their intention to do so but, rather, as a result of the action

of their out-of-states patients" who upon returning to their home state allege injury and

sue.  Id.  Courts, therefore, have "fashion[ed] jurisdictional rules," Kennedy, 919 F.2d

at 129, to address what some courts have termed "portable torts" cases.[3]

In Kennedy, the court held that there were sufficient minimum contacts for an

Oklahoma federal district court to assert personal jurisdiction over a Texas physician.

The patient's treating physician in Oklahoma removed a lesion and sent it to a Texas

doctor who "willingly accepted the sample" for analysis.  Id. at 127.  After measuring the

thickness of the sample, a measurement which turned out to be erroneous, the Texas

doctor sent a report and a bill to the patient's Oklahoma physician.  The Oklahoma

---

[3] The seminal "portable torts" case is Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972), which involved a patient's lawsuit against an out-of-state doctor who forwarded prescriptions to the patient in the patient's home state.  See id. at 288-89.  The Ninth Circuit concluded that the physician merely provided a service to the patient when he mailed the prescriptions, not a diagnosis or treatment.  The mailed prescriptions were "simply confirmation of the old diagnosis" rendered in the physician's state.  Id. at 289. The court stated that if the physician "was guilty of malpractice, it was through acts of diagnosis and prescription performed in [the physician's home state]."  Id. at 288.  The Ninth Circuit concluded that, on the facts presented, for personal jurisdiction purposes, the focus should be on the state where the medical services (i.e., the diagnosis and treatment) were rendered.  It reasoned that "the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available."  Id. at 289-90.  "Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it."  Id. at 90; see also Sanders v. Buch, 938 F. Supp. 532, 537 (W.D. Ark. 1996).

physician formulated his treatment of the patient based upon this report.  See id.  The

Texas doctor also sent his bill to Oklahoma.  See id.  The Texas doctor's erroneous

measurement of the lesion formed the basis of the patient's subsequent medical

malpractice action.  See id.

The Texas physician filed a motion to dismiss for lack of personal jurisdiction

which the district court granted.  See id.  The Tenth Circuit reversed.  See id.

Although it was undisputed that the Texas physician did not solicit business from

the Oklahoma physician, the Tenth Circuit nonetheless concluded that the Texas

physician purposefully directed his medical expertise to the forum state by accepting the

lesion sample, rendering a report on the sample's measurement, and sending the report

and a bill to Oklahoma.  See id. at 129 ("[w]hether a party 'solicited the business interface

is irrelevant, so long as defendant then directed its activities to the forum resident'")

(quoting Lanier v. American Bd. of Endodontics, 843 F.2d 901, 910 (6th Cir. 1988)).

The Texas physician "rendered his diagnosis to [the doctor] in Oklahoma, through the

mail, knowing its extreme significance and that it would be the basis of [the Oklahoma

doctor's] further treatment there."  Id.

On the other end of the factual spectrum is Mason v. Shelby Health Care Corp., a

medical malpractice action commenced in federal district court in Mississippi against a

Tennessee emergency room physician.  See 919 F. Supp. 235, 236-37 (S.D. Miss. 1996).

In Mason, which the court also finds instructive, the requisite minimum contacts for the

exercise of personal jurisdiction were lacking.  There, the patient was injured in a

train/truck collision and initially was transported to a local Mississippi hospital

emergency room.  See id. at 236.  The severity of the patient's injuries, however, required a transfer to another facility.  An emergency room doctor on call at a Tennessee medical center agreed over the telephone to accept the transfer, and preparations commenced to fly the patient by helicopter to the medical center in Tennessee.  See id. at 236-37.  While en route to the Tennessee facility, the patient was administered medicine at the direction of the Tennessee physician, but died prior to reaching the Tennessee hospital.  See id.  A lawsuit was filed in Mississippi federal district court against the accepting physician in Tennessee, alleging that the medicine ultimately caused the patient's death.  See id. at 236.

The Tennessee physician moved to dismiss for lack of personal jurisdiction.  The plaintiff argued that the contacts, which consisted of four telephone calls initiated by the medical staff in Mississippi to the Tennessee physician, were sufficient to establish the requisite minimum contacts in Mississippi.  See id.  The district court, however, disagreed, finding as follows:

> [W]hat is relevant to the court is the fact that [the Tennessee physician] never initiated any contact whatsoever with Mississippi that could potentially subject him to jurisdiction in this forum.  Rather, he merely received a limited number of phone calls from persons in Mississippi.  Such unilateral activity by others is insufficient to support this court's exercise of jurisdiction.

Id. at 239.

Here, the court finds that the facts are distinguishable from Freeman, supra, and more analogous to Mason, supra, where personal jurisdiction was found to be lacking.  In Freeman, the primary facts upon which the Tenth Circuit predicated its finding of

purposeful availment are absent in this case.  Here, Dr. Poppell conducted his medical

examination of Ashton in Florida, and, upon his determination that he could not perform

the immediate surgery which he deemed necessary, Dr. Poppell had no other involvement

in Ashton's treatment, other than his attempts to find a Florida facility which was capable

of providing Ashton the care he needed.  (See Dr. Poppell Aff. at 2, stating that he

attempted to arrange referrals to the hospital in Pensacola for surgery and, alternatively,

to the Fort Walton Beach, Florida, emergency room.)  Unlike in Freeman, there is no

evidence that Dr. Poppell made any type of diagnosis which was communicated or

forwarded to Florala Memorial Hospital, Dr. Page or any other entity or individual in

Alabama.  There also is no evidence that Dr. Poppell incurred expenses for which he

billed Florala Memorial Hospital.  There simply is no evidence, as in Freeman, that Dr.

Poppell initiated any contact whatsoever with the forum state concerning a diagnosis,

treatment, or other matter regarding Ashton's eye injury.  Rather, all of Dr. Poppell's

activities, including his alleged tortious conduct in declining to treat Ashton, were

confined to the State of Florida.  Dr. Poppell simply did not direct any medical activity

toward Alabama that could potentially subject him to personal jurisdiction in this forum.[4]

Rather, the evidence establishes that there was a single telephone call which Dr.

Poppell received from the forum state on the day in question, and, as in Mason, *supra*,

that call was unsolicited.  Dr. Poppell merely answered a call placed to him from Florala

Memorial Hospital and agreed in an emergency medical situation to accept a transfer of

Ashton to his facility.  The notion that this single telephone call from Alabama to Dr.

Poppell in Florida, a call which Dr. Poppell did not even place, could be considered a

purposeful availment of the privilege of conducting activities within Alabama is without

support.  Rather, the court finds that the limited contact was attenuated, random and

fortuitous and akin to the type of "unilateral activity" which is insufficient to support this

---

[4] The court notes that another purposeful activity which courts have concluded is sufficient to hale an out-of-state doctor into the forum state for litigation is the solicitation of business by the out-of-state doctor in the forum state.  See Freeman, 919 F.2d at 129 (collecting cases where courts have held that non-resident doctors or hospitals purposefully directed their activities to the forum state by intentionally soliciting business from that state).  For instance, relying on Freeman, *supra*, to support a finding of personal jurisdiction, another judge in this district determined that a non-resident podiatrist solicited business in the State of Alabama because the podiatrist's advertisements appeared in publications which serviced Alabama and announced that the podiatrist accepted Alabama insurance.  See Worthy, 307 F. Supp.2d at 1247-48; see also Bullion, 895 F.2d at 217 (California doctor who had solicited and enlisted Texas patient for tests involving experimental drugs was subject to suit in Texas); Cubbage v. Merchent, 744 F.2d 665, 669 (9th Cir. 1984) (California court could exercise personal jurisdiction over Arizona doctors whose services were advertised in California telephone books in white pages listing and yellow pages).  In this case, however, there is no averment or evidence that Dr. Poppell or his facility ever advertised in a format which reached Alabama or that Dr. Poppell engaged in any other activity in Alabama from which he derived an economic benefit.  There simply are no facts indicating that Dr. Poppell intentionally solicited business from the forum state.

17

court's exercise of personal jurisdiction over Dr. Poppell. <u>Mason</u>, 919 F. Supp. at 239. In other words, although the telephone call tangentially was related to this forum, the court finds that the "nature and quality and the circumstances of [its] commission create only an 'attenuated' affiliation with the forum." <u>Burger King</u>, 471 U.S. at 476 n.18 (citations omitted).

Moreover, contrary to Ashton's argument, the court finds that Dr. Poppell's acquiescence to accept Ashton's emergency transport to his facility in Florida on March 12, 2004, is not the equivalent of "purposeful availment of the privileges of conducting business in [Alabama]." <u>Francosteel Corp.</u>, 19 F.3d at 624. Notably, Ashton has not cited any authority in support of his position (<u>see</u> Doc. No. 23 ¶¶ 1-2), and the court's independent research uncovered none. There is, however, authority to the contrary. <u>Mason</u>, discussed <i>supra</i>, is one such case. <u>Nicholas v. Ashraf</u> is another case where the court specifically found that accepting out-of-state referrals does not equate purposeful availment, <u>see</u> 655 F. Supp. 1418, 1419 (W.D. Pa. 1987), and there are others. <u>See Harlow v. Children's Hosp.</u>, 432 F.3d 50, 63-64 (1st Cir. 2005) (holding that Maine federal district court could not exercise specific personal jurisdiction over Massachusetts hospital in medical malpractice lawsuit, based upon referral of Maine patient by Maine physician); <u>Jaffe v. Julien</u>, 754 F. Supp. 49, 53 (E.D. Pa. 1991) (unsolicited referral of business to an out-of-state lawyer from an in-state Pennsylvania lawyer did not provide sufficient contacts to make the former amenable to suit in Pennsylvania); <u>Soares v. Roberts</u>, 417 F. Supp. 304, 307 (D.R.I. 1976) (treating patient "without taking any action to solicit [patient's] case" is not sufficient to establish jurisdiction).

18

Based on the foregoing authorities, the court finds that, when Dr. Poppell accepted the referral from the out-of-state facility, specific jurisdiction was not thereby created. As aptly stated by one court, patients who are referred out of state must travel to that state for treatment and "should expect to travel again to complain of any alleged improperly rendered treatment." Clark v. Noyes, 871 S.W.2d 508, 515 (Tex. Civ. App. 1994).

In short, the court finds that the fact-specific evidence demonstrates that the requisite minimum contacts for the exercise of specific jurisdiction over Dr. Poppell do not exist. The evidence establishes that Dr. Poppell neither conducts nor solicits business in Alabama. He is not licensed to practice his profession in Alabama. Moreover, Dr. Poppell's interaction with the forum state on the day in question was not initiated by him. He received, rather than placed, the phone call in issue. Furthermore, Dr. Poppell's omission which allegedly exacerbated Ashton's injuries occurred solely in Florida, and Dr. Poppell did not perform any medical services in Alabama. Notwithstanding these facts, Ashton argues that the court has specific jurisdiction over Dr. Poppell pursuant to the "effects" test adopted by the Supreme Court of the United States in Calder v. Jones, 465 U.S. 783 (1984), because Ashton suffered injurious effects in Alabama resulting from Dr. Poppell's failure to treat him in Florida. Ashton's reliance on Calder, however, stops short of meaningful analysis, and the court is not persuaded that application of Calder's holding results in a finding of personal jurisdiction in this case. (See Doc. No. 23 ¶ 1.)

Calder involved a lawsuit brought by a celebrity in a California court seeking to recover for libel, invasion of privacy and intentional infliction of emotional harm from out-of-state professional writers, who were employed by a national tabloid magazine

based in Florida.  See 465 U.S. at 784-85.  In Florida, the writers wrote and edited an alleged libelous article about the celebrity which was published in the tabloid magazine.  See id. at 784-786.  The Supreme Court of the United States held that the California court's exercise of personal jurisdiction over the Florida writers was proper.  Although the non-resident writers prepared the story in another state, the Supreme Court concluded that their "intentional" actions were "expressly aimed at California" based on several considerations.  The writers' sources for the story were in California.  The writers knew that "the brunt of that injury would by felt by [the celebrity]" in California, the state where the tabloid had its largest circulation and in which the plaintiff lived and worked.  See id. at 789-90.  The Supreme Court, thus, concluded that California was the "focal point" of both the alleged libelous article and the "harm suffered" by the celebrity.[5]  See id. at 789.

In Calder, the Supreme Court expressly distinguished intentional conduct from "untargeted negligence," 465 U.S. at 789, and, consequently, courts, including the Eleventh Circuit, typically have confined the Calder effects test to intentional torts.  See, e.g., Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004) (stating that the Ninth Circuit generally applies the Calder "intentional act" requirement "to actions sounding in tort"); Molina, 207 F.3d at 1358 (observing that in Calder the Supreme Court differentiated between effects of negligence and intentional causes of

_____

[5] Although the Eleventh Circuit has applied Calder in contexts other than libel, see, e.g., Molina, 207 F.3d at 1358, the court is not aware of any decision from this circuit which has applied the Calder effects test in the context of a resident patient who received out-of-state treatment, and Ashton has cited none.

actions on minimum contacts analysis); see generally Rhodes v. Unisys Corp., 170 Fed.

Appx. 681, 684 (11th Cir. 2006) (reviewing each cause of action to ascertain whether any

claim "sufficiently connect[ed]" the out-of-state defendant to the forum state for personal

jurisdiction purposes).  Ashton's argument urging application of the Calder effects test,

thus, is not germane to Dr. Poppell's alleged unintentional acts which form the basis of

the proposed state law negligence claim.  Assuming, without deciding, that Dr. Poppell

committed intentional acts as to the remaining claims,[6] the court nonetheless finds that

Ashton has failed to demonstrate the type of purposeful conduct sufficient to establish

jurisdiction.

Ashton argues that the failure of Dr. Poppell to treat him in Florida caused him

devastating injury, that Dr. Poppell knew that Ashton would return to Alabama with

injuries as a result of Dr. Poppell's decision not to treat him, and that Ashton felt the brunt

of the effects of that injury in Alabama.  (Doc. No. 23 ¶ 1.)  Courts in other jurisdictions,

and most recently the Supreme Court of Alabama, however, have recognized that "most

courts define the Calder test as requiring something more than mere awareness that one's

intentional acts will cause harm in the forum state."  Ex parte Gregory, ___ So.2d ____,

2006 WL 1793751 (Ala. 2006) (citing Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002);

---

[6] The court recognizes that in Alabama the tort of outrage (which is another proposed state law claim asserted by Ashton against Dr. Poppell) is exceedingly narrow in scope, see Southern Bakeries, Inc. v. Knipp, 852 So.2d 712, 717 (Ala. 2002), but, for purposes of the present analysis, the court assumes arguendo the claim's validity. Moreover, practically speaking, it is unnecessary for the court to dwell on whether Dr. Poppell's conduct underlying the EMTALA claims is "intentional" within the meaning of Calder, given the clear legal futility of an EMTALA claim asserted against a treating physician, as discussed in the next section.

Griffis v. Luban, 646 N.W.2d 527 (Minn. 2002)).  The Ninth Circuit, in particular, has recognized that Calder does not "'stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)).  "'[S]omething more' is needed in addition to a mere foreseeable effect."  Id. (quoting Bancroft, 223 F.3d at 1087).  Adhering to Calder's terminology, the Ninth Circuit has concluded that "something more" is demonstrated when the non-resident defendant's conduct was "expressly aimed" at the forum state.  Id.; IMO Indus., Inc. v. Keikert AG, 155 F.3d 254, 265-66 (3d Cir. 1998).  Although other circuits have employed different phraseology, they are in agreement that the effects test does not override the requirement that the contact with the forum state must be purposeful.  See Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997) ("the effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state"); Wallace v. Herron, 778 F.2d 391, 394-95 (7th Cir. 1985) ("[T]he so-called 'effects' test is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still 'purposefully avail' [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

The court does not believe that "something more" is demonstrated by the facts of this case to support a finding that Dr. Poppell purposefully availed himself of the

privileges of conducting activities in Alabama.[7]  Other than the fact that perhaps Dr. Poppell knew that Ashton would return to Alabama from whence he came, the only other forum contact, and an attenuated one at that, was a telephone call initiated in Alabama and merely received by Dr. Poppell in Florida.  Similarly, the court finds that, as to the allegations of intentional conduct, the medical decisions made in the context of Dr. Poppell's examination of Ashton, which undisputedly occurred in Florida, although ultimately having an effect in Alabama by virtue of Ashton's residence there, cannot be said to be "expressly aimed" at Alabama.

Rather, the court finds that, on the facts of this case, the "focal point" is more appropriately placed on Florida.  To reiterate, Dr. Poppell conducted his medical examination of Ashton in Florida.  Once Ashton returned to Alabama, Dr. Poppell had no communications with Ashton or involvement with Ashton's treatment.  Simply stated, no medical services were performed by Dr. Poppell in Alabama.  Absent any actual conduct by Dr. Poppell in Alabama and given the limited communications consisting of one received telephone call from Alabama, the court finds that the fact that Ashton alleges that he suffered effects in Alabama arising from Dr. Poppell's failure to treat him in

---

[7] The court notes also that at least one circuit has concluded that the case for applying the "effects" theory is not as strong where the tort did not occur in the forum state.  In United States v. Swiss American Bank, Ltd., the First Circuit observed that, "[a]lthough Calder's significance is based on its 'effects' theory, in that case, the actual tort or injury, not just its consequences, occurred within the forum" when alleged libelous article was published in California; that "in-forum publication of the article in Calder provided an important contact for jurisdictional purposes."  274 F.3d 610, 624-25 (1st Cir. 2001).  Here, the in-forum contact based upon injury is missing, as Dr. Poppell's alleged tortious conduct occurred in Florida.

Florida simply does not change the direction of the focal point.[8]  Cf. Gallant v. Trustees of Columbia Univ. in City of New York, 111 F. Supp.2d 638, 643 (E.D. Pa. 2000) (in wrongful death lawsuit, Pennsylvania, where the deceased patient resided, was not the "focal point" of the New York physician's allegedly tortious activity, as the patient was treated by defendant's alleged agents almost exclusively in New York and any communication directed to Pennsylvania was incidental to patient's treatment in New York).  In sum, the court rejects Ashton's argument that the purposeful availment requirement is satisfied pursuant to Calder v. Jones, 465 U.S. 783 (1984).

(c)  Reasonable Expectation of Being Haled into Court in Alabama

Having found no purposeful availment, it is unnecessary for the court to proceed any further in its analysis.  It, however, logically follows that because Dr. Poppell did not purposefully direct any activity at the forum state, his contacts are not "such that [he] could reasonably anticipate being haled into court [in Alabama]."  Vermeulen, 985 F.2d

---

[8] The court notes also that Ashton's argument that the purposeful availment requirement is satisfied pursuant to Calder because Dr. Poppell should have foreseen that the effects of his alleged injurious actions in Florida would carry over to Alabama when Ashton returned home contravenes the policy concerns which arise in the context of the provision of medical services where the out-of-state physician otherwise only has attenuated and limited contact with the forum state.  See Kennedy, 919 F.2d at 129; cf. Cubbage, 744 F.2d at 671 (out-of-state physicians' contacts with the forum state were deemed "significant" where the non-resident physicians "solicit[ed] and derive[d] a substantial number of patients and revenue from the [forum] state" such that "California ha[d] a manifest interest . . . in protecting its citizens from tortious injury by [out-of-state] health care providers").

24

at 1546. Any other conclusion simply would contravene "[c]ommon sense and everyday experience." Helicopteros, 466 U.S. at 416.

### 4. Conclusion

There is no evidence that Dr. Poppell's contacts with Alabama were continuous and systematic so as to support the court's exercise of general personal jurisdiction over Dr. Poppell. Moreover, the court concludes that the Vermeulen test for determining minimum contacts is not satisfied, thus, precluding the exercise of specific personal jurisdiction over Dr. Poppell. Personal jurisdiction over Dr. Poppell, therefore, is lacking, and Ashton's claims against Dr. Poppell are due to be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[9]

### B. Rule 12(b)(6) Motions to Dismiss the EMTALA Claims against Henson and Dr. Page

As stated, Ashton brings claims pursuant to EMTALA against Henson and Dr. Page. These two defendants have moved to dismiss the EMTALA claims asserted against them for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[10] Accepting as true the facts alleged in the Complaint and reviewing those

---

[9] Consequently, it is unnecessary for the court to address Dr. Poppell's alternative basis for dismissal made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[10] EMTALA claims also are asserted against Florala Memorial Hospital and Emerald Coast Eye Institute. The merits of those claims are not before the court at this time.

facts most favorably to Ashton, see Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1262 (11th Cir. 2004), and for the reasons to follow, the court finds that the motions to dismiss are due to be granted because "it appears beyond doubt that [Ashton] can prove no set of facts . . . which would entitle him to relief." In re Johannessen, 76 F.3d 347, 349 (11th Cir. 1996).

Urging dismissal of the EMTALA claims, Henson and Dr. Page rely upon Holcomb v. Monahan, 807 F. Supp. 1526 (M.D. Ala. 1992) (Albritton, J.), in which another judge of this court dismissed an EMTALA cause of action against a physician, reasoning as follows:

> Section 1395dd(d)(2)(A) only provides for a private claim for a violation of this section against a participating hospital.  It makes no provision for a suit against the responsible physician.  Congress could as easily have provided a private remedy against a physician as against a hospital; it chose not do so. Federal courts may only hear cases where Congress has provided jurisdiction.  Since there is no provision within § 1395dd, et seq. that allows a private plaintiff to sue a responsible physician for violating the statute, the court finds that it lacks jurisdiction over [the physician].

Id. at 1531.  This court concurs with the well-reasoned finding in Holcomb which represents the clear majority view.  See King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994) (collecting cases); Zeigler v. Elmore County Health Care Auth., 56 F. Supp.2d 1334, 1336 (M.D. Ala. 1999).  Accordingly, for the same reasons espoused in Holcomb, the court finds that there is no individual civil liability under 42 U.S.C. § 1395dd and that the EMTALA claims are not viable against either an individual physician or a hospital administrator.

Holcomb also did not align itself with the contrary ruling in Sorrells v. Babcock, 733 F. Supp. 1189 (N.D. Ill. 1990), the opinion upon which Ashton relies.  See Holcomb, 807 F. Supp. at 1531; (Doc. Nos. 12, 13.)  Indeed, the Sorrells opinion has endured substantial criticism.  See, e.g., Howe v. Hull, 874 F. Supp. 779, 785 (N.D. Ohio 1994) (rejecting plaintiff's reliance on Sorrells and finding its reasoning unpersuasive); Lane v. Calhoun-Liberty County Hosp. Ass'n, Inc., 846 F. Supp. 1543, 1548 (N.D. Fla. 1994) (citing opinions in which courts noted, but declined to follow, the reasoning of Sorrells). This court also respectfully declines to follow the position articulated in Sorrells. Accordingly, the court finds that Henson's and Dr. Page's Rule 12(b)(6) motions to dismiss the EMTALA claims are due to be granted.

## C.  Ashton's Motion for Leave to Amend Complaint

As stated, Ashton seeks to add state law claims by virtue of his proposed First Amended Complaint.  Although the proposed First Amended Complaint is not a model of clarity, the court liberally has construed the allegations therein, see Brewer v. Alabama, 111 F. Supp.2d 1197, 1203 n.5 (M.D. Ala. 2000), and has discerned that Counts Five, Six, Seven and Eight each assert a state law cause of action.  (See 1st Am. Compl. ¶¶ 23, 27, 31, 35 (Doc. No. 22).)  Count Five contains a state law claim for negligence against all defendants for an alleged breach of an assumed duty to provide adequate emergency medical care.  (See id. ¶ 24.)  Count Six is a state law negligent hiring and supervision claim against Florala Memorial Hospital.  (See id. ¶ 27.)  Count Seven contains a state law cause of action against all defendants for outrage.  (See id. ¶¶ 31-32.)  Count Eight

asserts claims against Florala Memorial Hospital and Henson for negligence and/or wantonness "in the administration and operation of their medical facilities[.]"  (See id. ¶ 36.)

Opposing Ashton's motion to amend, Henson, Dr. Page and Florala Memorial Hospital contend that the new state law claims in the proposed First Amended Complaint are barred by the statute of limitations and do not relate back to the filing of the original Complaint within the meaning of Rule 15(c) of the Federal Rules of Civil Procedure. (Doc. No. 24 ¶¶ 6-8, 10); (Doc. No. 15 at 3-8); (Doc. No. 17.)  These defendants, therefore, assert that any amendment to the Complaint would be futile.  For the reasons to follow, the court disagrees.

There must be a substantial reason to deny a motion to amend.  Id.  Although leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "futility of amendment" is a substantial reason which justifies the denial of a motion to amend a complaint.  See Foman v. Davis, 371 U.S. 178, 182 (1962).

As a general rule, a party must file a complaint within the statute of limitations.  A tardy complaint, however, is permissible if it "relates back" to the original claim.  See Fed. R. Civ. P. 15(c).  Here, the statute of limitations is two years on Ashton's state law claims asserted in the proposed First Amended Complaint.  See Ala. Code § 6-5-482(a); (Doc. No. 24 ¶ 8.)  It is not disputed that the relevant two-year statute of limitations has expired on Ashton's state law claims and that, therefore, these causes of action are time barred, unless the proposed new claims relate back to the date Ashton filed his original Complaint.

28

Ashton asserts that Rule 15(c)(2) of the Federal Rules of Civil Procedure provides the basis for relation back.  (Doc. No. 22 ¶ 1.)  Rule 15(c)(2) states that an amendment of a pleading relates back to the date of the original pleading when "(2) the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2). While courts liberally apply Rule 15(c) in favor of relation back of amendments, see Williams v. U.S., 405 F.2d 234, 236 (5th Cir. 1968), "'when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed."  Moore v. Baker, 989 F.2d 1129, 1132 (11th Cir. 1993).  In Moore, the Eleventh Circuit observed that "[t]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted."  Id.

Ashton contends that his new state law claims arise out of the "transaction" which occurred on March 12, 2004, when he sought medical treatment for his injured left eye and that this is the same transaction which forms the basis of his EMTALA claims asserted in his original Complaint.  (Doc. No. 22 ¶ 2.)  Ashton asserts that the allegations in his original Complaint should have placed Defendants "on notice that new claims of negligence might be asserted[.]"[11]  (Id.)

Dr. Page, on the other hand, argues that the claims in the original Complaint support only claims under EMTALA and that EMTALA claims are "separate, distinct and

_____

[11] In his motion for leave to amend, Ashton focuses on the adequacy of notice to Dr. Page.  The court construes Ashton's argument as applying to all defendants.

unrelated to any alleged medical malpractice claims asserted in [Ashton's] First Amended Complaint." (Doc. No. 26 at 4.) Henson and Florala Memorial Hospital join in Dr. Page's argument, contending that "[t]here is a complete dichotomy between EMTALA claims and 'state law claims' . . . arising under the Alabama Medical Liability Act." (Doc. No. 24 ¶¶ 6, 10.)

In Moore, *supra*, the primary authority relied upon by Dr. Page, Henson and Florala Memorial Hospital (Doc. No. 15 at 6; Doc. No. 24 ¶ 6), the Eleventh Circuit examined the doctrine of relation back in the context of a medical malpractice lawsuit. There, on the eve of the expiration of the statute of limitations, the plaintiff brought a medical malpractice claim predicated on the failure of her neurologist, Dr. Baker, to inform her of an effective treatment alternative which was less risky than the surgery to which she consented. See Moore, 989 F.2d at 1131. Several months later, the plaintiff sought to amend her complaint to add a negligence claim pertaining to the neurologist's surgical performance and his post-operative care of her. See id. Ultimately, the district court denied the plaintiff's motion to amend.

On appeal, applying Rule 15(c)(2)'s relation back principles, the Eleventh Circuit concluded that the negligence claim did not "arise out of the same conduct, transaction, or occurrence as the claim in the original complaint[]" and that, therefore, the claim did not relate back to the filing of the original complaint. Id. at 1132. Consequently, the claim was barred by the statute of limitations. See id. The Eleventh Circuit explained:

> [T]he allegations asserted in [the plaintiff's] original complaint contain
> nothing to put Dr. Baker on notice that the new claims of negligence might
> be asserted. Even when given a liberal construction, there is nothing in [the

plaintiff's] original complaint which makes reference to any acts of alleged negligence by Dr. Baker either during or after surgery. The original complaint focuses on Baker's actions before [the plaintiff] decided to undergo surgery, but the amended complaint focuses on Baker's actions during and after the surgery. The alleged acts of negligence occurred at different times and involved separate and distinct conduct. In order to recover on the negligence claim contained in her amended complaint, [the plaintiff] would have to prove completely different facts than would otherwise have been required to recover on the informed consent claim in the original complaint.

Id.

The court finds that Moore is distinguishable on its facts and, thus, does not support Defendants' argument that Ashton's new state law claims do not relate back in time to the original pleading. Here, the original Complaint recites as the core factual predicate of Ashton's EMTALA claims what transpired on March 12, 2004, when Ashton sought medical treatment for an eye injury at Florala Memorial Hospital, and what occurred immediately before and after his transfer by ambulance to Emerald Coast Eye Institute. (See Compl. ¶¶ 7, 10, 13, 17, 21, 25, 29, 33.) The state law claims in the proposed First Amended Complaint focus on the same events of March 12, 2004, and the quality of medical care Ashton received on that date at Florala Memorial Hospital and at Emerald Coast Eye Institute. All of the claims -- both original and new -- arise from decisions made regarding a course of treatment for Ashton's eye injury and the alleged substandard care Ashton received at Florala Memorial Hospital and Emerald Coast Eye Institute. Distinguishable from Moore, here, the court finds that the new state law claims do not require proof of "completely different facts." 989 F.2d at 1132.

Moreover, the court finds that the averments in Count Five of the original Complaint, alleging that Defendants "voluntarily assumed" a duty to provide medical care but "violated" that duty by "discontinuing . . . emergency medical care [to] [Ashton]," suggest possible negligence in the provision of medical services Ashton received on March 12, 2004.[12]  (Compl. ¶ 21.)  The foregoing alleged facts further distinguish this case from Moore, where "there [was] nothing in [the plaintiff's] original complaint which ma[de] reference to any acts of alleged negligence by Dr. Baker either during or after surgery."  989 F.2d at 1132.  The court finds that the facts forming basis of the EMTALA claims in the original Complaint, when considered in combination with the allegations suggesting negligent conduct, were adequate to place Defendants on notice that they may have to defend against other causes of action arising from events flowing from their professional contact with Ashton on March 12, 2004.[13]  See id. (emphasizing that notice to defendant is the critical inquiry in the Rule 15(c) analysis).

_____

[12] The court notes that it does not concur with Ashton's assertion that Count Five of the original Complaint sets forth "a state law negligence claim," as the averments therein clearly restrict the cause of action to one under EMTALA.  (See Compl. ¶ 20.)

[13] The court notes that, in an arguably analogous context, courts have concluded that EMTALA and state medical malpractice claims arise from a common nucleus of operative facts so as to support the court's exercise of supplemental jurisdiction over state law medical malpractice claims.  See Dollard v. Allen, 260 F. Supp.2d 1127, 1135 (D. Wyo. 2003) (finding that plaintiff's "state law negligence claims derive from the same common nucleus of operative facts as her federal EMTALA claims: her treatment at, and discharge from, [defendant hospital]"); Brinkley v. Universal Health Services, Inc., 194 F. Supp.2d 597, 600 (S. D. Tex. 2002) (finding that "the facts giving rise to the EMTALA claim and the facts giving rise to the state law claims arise from a common nucleus of operative facts (i.e., the failure of the Defendants to provide adequate medical care to Patrick Dixon Brinkley)"); Nelson v. Calvin, No. Civ. A. 01-2021-CM, 2001 WL 789396, *2 (D. Kan. July 9, 2001) (same).

32

Although the court is aware that EMTALA is not a substitute for state law medical malpractice claims,[14] a point duly emphasized by Defendants, for relation back purposes, Rule 15(c)(2)'s language centers on conduct, rather than on causes of action.  Given Rule 15(c)(2)'s focus, this circuit has held that relation back is permitted even where "'new theories of recovery'" are introduced, provided that "'the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint.'"  Williams v. U.S., 405 F.2d 234, 237 (5th Cir. 1968)[15] (quoting Travelers Ins. Co. v. Brown, 338 F.2d 229, 234 (5th Cir. 1964)); see also Bularz v. Prudential Ins. Co. of America, 93 F.3d 372, 379 (7th Cir. 1996) (relation back is permitted when "an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading"; "there is no additional requirement that the claim be based on an identical theory of recovery."); 3 James Wm. Moore, et al., Moore's Federal Practice § 15.19[2] at 15-82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes

---

[14] See, e.g., Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir. 1992) ("The avowed purpose of EMTALA was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive 'adequate care, but instead to provide an adequate first response to a medical crisis' for all patients and 'send a clear signal to the hospital community . . . that all Americans, regardless of wealth or status, should know that a hospital will provide what services it can when they are truly in medical distress'" (quoting 131 Cong. Rec. S13904 (Oct. 23, 1985) (statement of Sen. Durenberger)).

[15] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  See 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the legal theory").  The court, thus, is not swayed by Defendants' arguments against

relation back which concentrate on the distinctions between the purposes and elements of

medical malpractice and EMTALA claims.  Even though Ashton's new claims admittedly

are based on fundamentally different theories of relief than the EMTALA claims, as

discussed *supra*, they arise from the same set of core facts presented in the original

Complaint.  As such, the court finds that Ashton is adding new legal theories to the

conduct which was identified in the original Complaint, rather than adding new

occurrences.

In sum, the court concludes that Rule 15(c)(2)'s relation-back provision brings

Ashton's state law claims within the statute of limitations.  Accordingly, the court finds

that the new state law claims are not futile as time barred and that Ashton's motion for

leave to amend the complaint should not be denied on that ground.  However, as

discussed earlier in this opinion, other of Ashton's claims do not survive the individual

Defendants' Rule 12(b) motions, such as Ashton's EMTALA claims.  The court, thus,

concludes that Ashton's motion for leave to amend is due to be granted on the condition

that he file a First Amended Complaint which complies with the court's rulings herein.[16]

---

[16] When repleading his state law claims, Ashton should be mindful of the pleading
requirements imposed by § 6-5-551 of the Code of Alabama.  See Ala. Code § 6-5-551;
Betts v. Eli Lilly and Co., 435 F. Supp.2d 1180, 1188 (S.D. Ala. 2006).

## V.  ORDER

Accordingly, based on the foregoing, it is CONSIDERED and ORDERED as follows:

(1)  the motion to dismiss filed by Defendant Samuel E. Poppell, M.D., for lack of personal jurisdiction (Doc. No. 19), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, be and the same is hereby GRANTED and all claims asserted against Dr. Poppell be and the same are hereby DISMISSED with prejudice and Dr. Poppell be and he is hereby DISMISSED as a Defendant in this lawsuit;

(2)  the motions to dismiss filed by Defendants Blaire Henson and Russell Page, M.D. (Doc. Nos. 7, 8), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, be and the same are hereby GRANTED (Doc. Nos. 7, 8, 19), and the EMTALA claims asserted against these Defendants be and the same are hereby DISMISSED with prejudice; and

(3)  Plaintiff John Ashton's motion to amend the complaint (Doc. No. 22) be and the same is hereby GRANTED on the condition that, on or before October 19, 2006, Ashton file a revised First Amended Complaint which complies with the court's rulings herein.

Done this 5th day of October, 2006.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE