UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ASHTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 2:06CV-226-D |
| | ) |
| FLORALA MEMORIAL | ) |
| HOSPITAL; BLAIRE HENSON; | ) |
| RUSSELL PAGE, D.O., and | ) |
| EMERALD COAST EYE | ) |
| INSTITUTE, P.A., | ) |
| | |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

This case is before the Court on the Motion for Summary Judgment filed by Defendant, Russell Page, D.O. Upon review of the motion and applicable law, it is clear that the motion is due to be granted and Dr. Page is due to be dismissed as a defendant in this case.

**I. PROCEDURAL HISTORY**

Plaintiff initially filed this case against Dr. Page and others, seeking relief only under the *Emergency Medical Treatment and Active Labor Act*, 42 U.S.C. §1395(d)(d) (*EMTALA*), contending that all Defendants were covered by the provisions of *EMTALA*. On March 24, 2006, Dr. Page filed his Motion to Dismiss on the grounds that *EMTALA* does not apply to private physicians. On May 25, 2006, this Court entered an order granting Dr. Page's Motion to Dismiss, holding that there is no individual civil liability

under 42 U.S.C. §1395(d)(d) and that *EMTALA* claims are not viable against either an individual physician or a hospital administrator. (See, document 27, page 26.) The Court, however, allowed Plaintiff leave to amend the Complaint to assert state law claims.

On June 7, 2006, Plaintiff filed his amended complaint in which he asserted state law claims against Dr. Page. In the amended complaint, Plaintiff asserts eight claims or causes of action. Claim I is a re-assertion of the *EMTALA* claim which was previously dismissed by the Court. Claim II is also a re-cast *EMTALA* claim asserted against all Defendants. Claim III is a state law claim, which contends that the Defendants "failed to perform an appropriate transfer" of the patient. Claim IV is yet another re-cast *EMTALA* claim. Claim V is a state law claim alleging that the Defendants were negligent in failing to perform "emergency surgery on the Plaintiff's eye." Claim VI is identical to Claim V, but is asserted against Defendant, Florala Memorial Hospital. Claim VII alleges that the Defendants "engaged in outrageous conduct in refusing to treat" the Plaintiff's injury. Claim VIII is identical to Claim VII, except that it is asserted against Florala Memorial Hospital and Blaire Henson.

Defendants filed Motions to Dismiss based upon the fact that Plaintiff's state law claims were first asserted after the expiration of the statute of limitations and consequently did not relate back to the filing of the original Complaint by Plaintiff. On October 5, 2006, the Court denied the Motion to Dismiss. (See document number 27.) Thereafter, the Court entered a Scheduling Order which adopted the parties' discovery plan and established deadlines for the designation of expert witnesses and other matters

as set forth therein. (See document 30.) The scheduling order required that Plaintiff provide reports of any retained expert witnesses not later than January 10, 2007. Plaintiff has not designated any retained expert to testify against Dr. Page in this case. However, Plaintiff did seek relief from this requirement identifying Dr. Peter Zloty as an expert witness. Dr. Zloty, an ophthalmologist practicing in Dothan, Alabama, was a subsequent treating physician. The Defendants have not opposed Plaintiff's motion to be relieved from providing an expert report from Dr. Zloty since he was a subsequent treating physician rather than a retained expert. Plaintiff has also submitted an affidavit of Jason Smith, an employee of the Opp Rescue Squad, who was an emergency medical technician on the ambulance transporting Mr. Ashton from Florala Memorial Hospital to the offices of Dr. Poppell in Fort Walton Beach, Florida. Plaintiff has not identified any expert witness competent to provide expert testimony against Dr. Page, an emergency medicine physician.

Dr. Page has now filed a Motion for Summary Judgment, seeking dismissal from this case on the grounds that there exists no genuine issue of material fact as relates to Dr. Page and that Dr. Page is entitled to prevail as a matter of law. Dr. Page submits the affidavit of Dr. Zloty, his own affidavit and the medical records of Florala Memorial Hospital in support of this motion.

## II. FACTS

On March 12, 2004, Plaintiff, John Ashton, was involved in an altercation where he was assaulted by a third party. In the assault, Ashton received an injury to his left eye. Ashton has described the injury as occurring when the assailant "sucker punched" him in

the left eye. He has also testified that the assailant poked him in the eye with a screwdriver. (Deposition of Ashton, pg. 17.) Following the assault, Ashton was brought to the emergency room at Florala Memorial Hospital by the Florala Police Department. (Deposition of Ashton, pg. 19.) When he arrived at the emergency room, he was seen by Dr. Russell Page, an emergency medicine physician who was covering the emergency room that day. Dr. Page examined the Plaintiff and determined that he needed treatment from an eye surgeon or ophthalmologist. Dr. Page is not trained in ophthalmology and the Florala Memorial Hospital did not have an ophthalmologist on staff. (Affidavit of Dr. Page.) Florala Memorial Hospital was not equipped to perform eye surgery. Consequently, Dr. Page contacted Dr. John Poppell in Fort Walton Beach, Florida. Dr. Poppell is an ophthalmologist qualified to perform eye surgery. Dr. Poppell agreed to accept the patient on transfer and instructed Dr. Page to have the patient transported to his clinic in Fort Walton Beach, Florida. (Affidavit of Dr. Page.) John Ashton was not able to drive an automobile to Dr. Poppell's office and he had no family to take him to Dr. Poppell's clinic. Therefore, it was necessary for Dr. Page to arrange for a transfer of the patient by ambulance or rescue squad to Dr. Poppell's clinic. Dr. Page arranged for Ashton to be transported by the Opp Rescue Squad. (Deposition of Ashton, pg. 23.) Dr. Page followed the instructions of Dr. Poppell regarding the placement of a protective eye patch and the patient was transferred in stable condition from Florala to Dr. Poppell's clinic.

For reasons that are not relevant to the claims against Dr. Page, Dr. Poppell was unable to treat Ashton at his clinic and he requested that the rescue squad personnel

transport Ashton to a Florida hospital for eye surgery. The ambulance crew refused to do this, contending that the law restricted their authority to transport a patient within the State of Florida. Consequently, the EMT personnel contacted the hospital in Opp, Alabama and they were instructed to transport the patient to Flowers Hospital in Dothan, Alabama, where Ashton was treated by Dr. Peter Zloty.[1]

After the patient left Florala Memorial Hospital, Dr. Page was not involved in any way in the care of the patient. Dr. Page's sole involvement with this patient was to examine him in the emergency room in Florala, to determine that he needed the care of an eye surgeon and to arrange for the transfer of the patient to an ophthalmologist who had agreed to accept the patient on transfer. Dr. Page was not in any way involved in (nor even informed of) the difficulties encountered by the EMT personnel within the State of Florida. (Affidavit of Dr. Page.)

All of Dr. Page's actions in dealing with the patient were in keeping with the applicable standard of care for a physician practicing emergency medicine. As shown by the affidavits of Dr. Page and Dr. Jones, at no point did Dr. Page deviate from the standard of care in his dealings with this patient. The fact that Ashton may have been uninsured played no role in any medical decision or treatment provided by Dr. Page.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on

---

[1] The EMT personnel contacted Mizell Memorial Hospital in Opp, Alabama, rather than Florala Memorial because the Opp Rescue Squad was based in Opp, not Florala.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the burden of establishing through pleadings, depositions, discovery responses or affidavits which "demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The moving party can meet this burden by presenting evidence showing that there is no dispute of a material fact or by showing that the non-moving party has failed to present evidence in support of some element of that party's case on which the party bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met this burden of proof, Rule 56(e) requires that the non-moving party establish by way of depositions, discovery responses or affidavits "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the non-moving party must do more than show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In ruling on a Motion for Summary Judgment, the Court must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the non-moving party has responded to the Motion for Summary Judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, *Fed.R.Civ.P.* 56(c).

## IV. ARGUMENT

In his amended complaint, Plaintiff re-asserts *EMTALA* claims against Dr. Page and the other Defendants in this case. As the Court ruled on Page's Motion to Dismiss, *EMTALA* claims are not viable against individual defendants and Dr. Page is entitled to summary judgment on all of Plaintiff's claims predicated on *EMTALA*. See, *Holcomb v. Monohan,* 807 F.Supp. 1526 (M.D.Ala. 1993, aff'd 30 F.3d 116 (11th Cir. 1994). In Plaintiff's amended complaint, it is difficult to tell which claims are asserted against which party because each succeeding claim incorporates all of the allegations of the previous claim. Therefore, Dr. Page respectfully submits that to the extent any of Plaintiff's claims attempt to assert liability against him under *EMTALA*, he is entitled to summary judgment on all such claims.

In addition to the *EMTALA* claims asserted by Plaintiff, Plaintiff attempts to assert state law claims against Dr. Page. It is undisputed that Dr. Page is a healthcare provider as that term is defined in the *Alabama Medical Liability Act (AMLA)*. See, §6-5-540, *Code of Alabama* (1975), et seq.; §6-5-548, *Code of Alabama* (1975), et seq. A physician is defined in the *AMLA* as a person licensed to practice medicine in the State of Alabama. It is undisputed that Dr. Page is a licensed physician, practicing medicine in the State of Alabama. *AMLA* governs all claims for injury or death against healthcare providers.

Claims brought against healthcare providers which arise out of the professional relationship of physician-patient are governed by *AMLA* regardless of how the claims are framed by the Plaintiff's pleadings. *Fain v. Smith*, 479 So. 2d. 1150 (Ala. 1985); *Otwell v. Bryant*, 497 So.2d 111 (Ala. 1986); *Mobile Infirmary v. Delchamps*, 642 So.2d 954

(Ala. 1994); *Ex parte Sonnier*, 707 So.2d 635 (Ala. 1997). Although *AMLA* allows for various causes of action against healthcare providers, all such claims are governed by the requirements of *AMLA*. *Collins v. Ashurst*, 821 So.2d 173 (Ala. 2001). In *Mock v. Allen*, 783 So.2d 828 (Ala. 2000), the Alabama Supreme Court held:

> Although *AMLA* applies only to medical-malpractice actions, a plaintiff cannot avoid the application of the *AMLA* by "creative pleading." This Court has consistently held that it is the substance of the action, rather than the form, that is the touchstone for determining whether an action is actually alleging medical-malpractice. (783 So.2d at 832.)

Here, all of the claims asserted by Ashton against Page clearly arise out of the medical services provided by Dr. Page to Mr. Ashton in the context of the professional relationship of patient and physician. Consequently, all of Plaintiff's claims against Page are governed by *AMLA*. The requirements of *AMLA* apply with equal force in federal court. *Jackson v. Pleasant Grove Care Center*, 980 F.2d 692 (11th Cir. 1993); *Barton v. American Red Cross*, 829 F. Supp. 1290 (M.D. Ala. 1993), aff'd 43 F3d. 678, certiorari denied 116 S.Ct. 84, 516 U.S. 822, 133 L.Ed.2d 41, rehearing denied 116 S.Ct. 550, 516 U.S. 1002,133 L.Ed.2d 452, aff'd 43 F.3d 679, certiorari denied 116 S.Ct. 84, 516 U.S. 822, 133 L.Ed.2d 41, rehearing denied 116 S.Ct. 550, 516 U.S. 1002, 133 L.Ed.2d 452.

A plaintiff under *AMLA* must ordinarily present expert testimony from a similarly situated healthcare provider to establish: (1) the appropriate standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused injury to the plaintiff. *Bozeman v. Orum*, 199 F.Supp.2d 1216 (M.D. Ala. 2002); *Lyons v. Walker Regional Medical Center*, 791 So.2d 937 (Ala. 2000). Where the defendant

physician is a specialist in a medical field such as emergency medicine, the plaintiff's proffered expert must be: (1) a licensed physician; (2) trained and experienced in the same specialty; and (3) must have practiced in the same specialty during the year preceding the alleged breach of the standard of care. §6-5-548, *Code of Alabama* (1975); *Bradley v. Mariner Health, Inc.*, 315 F.Supp.2d 1190 (S.D. Ala. 2004); *Mixon v. Cason*, 622 So.2d 918 (Ala. 1993).

Under the *Alabama Medical Liability Act*, the Plaintiff must prove by substantial evidence that "the healthcare provider failed to exercise such reasonable care, skill and diligence as other similarly situated healthcare providers in the same general line of practice ordinarily have and exercise in a like case." (See, §6-5-548(a)). Therefore, in order to establish a claim against Dr. Page, the Plaintiff must present substantial evidence that Dr. Page breached the standard of care by failing to provide to John Ashton such reasonable care, skill and diligence as other similarly situated physicians would have provided in a like case.

In order to carry this burden of proof, Plaintiff must establish by expert testimony the standard of care and any violation thereof. See, *Dowdy v. Lewis*, 612 So.2d 1149 (Ala. 1992); *Waddail v. Roberts*, 827 So.2d 784 (Ala. 2000). In this case, expert testimony to establish the breach of the standard of care is clearly required.[2] Clearly, the evaluation of an eye injury and stabilization and transfer of the patient to an appropriate

---

[2] Alabama law requires expert testimony except where the act or omission requires only common knowledge and understanding, such as when a foreign object is left inside a surgical patient or the wrong body part is operated on, or where the plaintiff relies on a recognized standard or authoritative text or where the plaintiff himself is a qualified medical expert. See, *Loeb v. Cappelluzzo*, 583 So.2d 1323 (Ala. 1991). None of the exceptions apply here.

specialist is not within the common knowledge of the average layman and requires expert testimony.

Since Dr. Page is a specialist in emergency medicine, it is incumbent on the Plaintiff to prove any breach of the standard of care applicable to this case by the expert testimony of a similarly situated healthcare provider, *i.e.* a specialist in emergency medicine. §6-5-548(c), *Code of Alabama* (1975). Without such testimony, Plaintiff cannot establish the standard of care, nor any violation thereof.

Under the Court's Scheduling Order, the Plaintiff was allowed to January 10, 2007, to identify any retained experts which he intends to call at the trial of this case. The only expert physician identified by Plaintiff in response to this requirement was Dr. Peter Zloty. Dr. Zloty is an ophthalmologist and is not a board certified emergency room physician. Therefore, Dr. Zloty is not qualified to offer expert testimony regarding the standard of care as related to an emergency medicine physician, or any violation of the standard of care by an emergency medicine physician.

In addition to proof of a breach of the standard of care, the Plaintiff must prove medical causation in a case governed by *AMLA*. *Brookwood Medical Center v. Lindstrom*, 763 So.2d 951 (Ala. 2000). Proof of medical causation must be established through qualified expert testimony. *DCH Healthcare authority v. Duckworth*, 883 So.2d 1214 (Ala. 2003). In his amended complaint, Ashton alleges that as a consequence of "the delay between the injury and the emergency surgery, John Ashton has lost nearly all of the sight in the injured eye." (Document number 31, ¶ 7). Clearly, Ashton must prove this allegation by competent expert testimony, which he cannot do.

Dr. Zloty, the subsequent treating physician, has unequivocally stated in his affidavit that "any delay in surgical treatment of the injury <u>had</u> <u>no</u> <u>effect</u> on the ultimate outcome in the case." (Zloty affidavit; emphasis added). In addition, the Zloty affidavit establishes that Ashton's loss of vision in the injured eye resulted from his own failure to follow post-operative care instructions, not any "delay" in the performance of surgery.

Thus, not only is Ashton's theory of causation completely refuted by Dr. Zloty, Ashton is precluded from calling an expert on the issue of medical causation due to his failure to comply with the requirements of the Court's Scheduling Order. Consequently, Plaintiff cannot prove medical causation in this case, an essential element of any case brought under *AMLA*.

## V. CONCLUSION

Plaintiff has failed to designate qualified experts as required by the Court's Scheduling Order in this case. Consequently, he cannot prove the applicable standard of care, violation of the standard of care or medical causation, all essential elements of an action governed by *AMLA*. Thus, Ashton cannot prove the elements of his claims against Dr. Page and he is entitled to summary judgment pursuant to Rule 56, *F.R.Civ.P.* It is therefore respectfully submitted that the Court should enter an order granting Dr. Page's Motion for Summary Judgment and dismiss Plaintiff's claims against him, with costs taxed against Plaintiff.

Respectfully submitted this the 27th day of February, 2007.

/s/ *Alan Livingston*
ALAN LIVINGSTON, (LIV007)
*Attorney for Defendant,*
*Russell Page, D.O.*
LEE & McINISH, ATTORNEYS
Post Office Box 1665
Dothan, Alabama 36302
Telephone (334) 792-4156
Facsimile (334) 794-8342
alivingston@leeandmcinish.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 27th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: A. Riley Powell, IV, Tabor Novak and Jack B. Hinton, Jr.

Dated this the 27th day of February, 2007.

/s/ *Alan C. Livingston*
OF COUNSEL